The next case on calendar for argument is Insurance Company of the State of Pennsylvania et al. v. Kellogg. Please proceed, counsel. Good morning, Your Honors. Russell Petty representing the City of Long Beach. May it please the Court. With respect to the first issue on which the City is the appellant, the attorney fee issue, as a first point, California law is clear from an express statement by the California Supreme Court in Brandt that attorney fees are in fact legal damages and that the money that an injured party has to pay, the fees that the injured party has to pay to his or her lawyer in order to get into court and be made whole, are the precise equivalent of the doctor bills that an injured plaintiff has to pay in a personal injury case. They're simply not treated as damages in the general garden variety case because of procedural or policy reasons rather than in fact they're not fees that you pay to somebody in order to compensate them for a legal wrong. But we don't have to win, the city does not have to win this argument in order to prevail with respect to the coverage issue because in the AIU case, the California Supreme Court was explicit that the definition of damages within the context of a CGL policy like the one here is broader than the legal definition of damages and in fact would be, because insurance policies have to be read by laymen, would be read in the ordinary and popular sense of the word rather than the strict legal definition and the AIU court turned to Webster's and fashioned a definition that essentially damages are money that, you know, compensation or satisfaction that you're legally required to pay to a party because of a legal wrong done to that party. Counsel, let me ask you a question. When this issue about damages was proposed to the court, did you argue that the word damages in this policy was ambiguous? You know, Your Honor, as I sit here, I just, I mean, I... I mean, did you say that this damages word was something which was clear and unambiguous and therefore could be determined by the court or did you determine that this was an ambiguous word? You know, the reason why I hesitate, Your Honor, is I'm not the one who actually argued this. Well, I'm trying to figure that out and you're here on appeal because it seems to me that that's a pretty important thing for me to decide. I don't see why we get to California law if it's an ambiguous word. Well, you know, Your Honor, it is an ambiguous. I'll tell the court... If it's ambiguous, then why didn't you just argue construed against the insurance company and give me all the 20 million? Your Honor, I'm absolutely certain. I mean, I wasn't there, but I'm absolutely certain the city would not have not made that argument because... Where is it in the record then? I didn't find it. Well, you know, I mean, it would be in the party's briefs and then this... I didn't find it. Pursuant to the local rules of this court, you know, you don't have to cite... You know, you don't put briefs into the record. But if you're here representing the city, we expect you to know the history of the case, the record, the proceedings. If you're here to advocate on the city's behalf, you should be able to direct us or we can go in the record to find the arguments that you are referencing. Well, you know, the issue that the city had not raised, this issue, is not one that's raised on this appeal. I mean, we made the argument... Well, frankly, it's a motion for summary judgment, wasn't it? It was a motion for summary judgment. That's correct, Your Honor. And it was a motion for summary judgment about what damages is. That is correct, Your Honor. And so it seems to me then, reading the motion, that one's determining that the insurance company said it's clear and unambiguous here that it means one thing and you were arguing it's clear and unambiguous and then another. Because if I'm arguing that it's clear and unambiguous that it means no attorney's fees and you say it's clear and unambiguous it includes or doesn't include attorney's fees, then the old court has to make a summary judgment decision. But if, on the other hand, the court has to say whether it's ambiguous or not, that's a legal decision which I can look at. And my worry is that we had a trial. That's correct, Your Honor. We had a trial about these issues. Well, we didn't have a trial about the damages issue because it came before. That's correct. We had a trial about everything, all these other issues, and I know what the standard review is then for the district court on the trial. My worry is do I apply clear and unambiguous to this particular issue and then go try to find out what it really is based on California law because it's so clear? Well, Your Honor, while I believe that the city did, in fact, argue that the policy language was ambiguous and should be construed, the court, again, doesn't have to reach that point either because we have a definition of the word damages in a CGL policy issued by the California Supreme Court in the AIU case, and in that case they issued it. Well, are you giving that issue up? Giving what issue up, Your Honor? That it wasn't clear and ambiguous? Your Honor, I'm not giving that issue up. I believe that issue was raised below. I will attempt to find a citation during the, you know, while I'm... Well, I mean, Your Honor, it's a three-prong argument, and that's the third prong. I mean, the first prong is that they are legal damages under the Brandt case. The second prong is with the definition of damages given in the AIU case by the California Supreme Court that the attorney-feed award to the McClures in this case fits precisely within that legal definition, and the third argument is that if those two aren't met, then it's ambiguous, and because it's ambiguous, therefore, the policy should be construed against the insurance company, Your Honor. So that's an argument I'm making. We're certainly not waiving it. I'm virtually certain that the argument was made below, and I'll attempt to establish that while I'm sitting down. So if we go to your second issue, if we go to your second issue, was that in front of the district court? It was, Your Honor. So are you suggesting that the district court's findings of fact in that particular case were clearly erroneous? Well, no, Your Honor. This was done on summary judgment. Well, no, your second issue. Oh, I'm sorry. Post-judgment costs and interest. Well, you know, that's a simple matter of policy interpretation, Your Honor. Well, but if it's a policy interpretation, you didn't have to have a trial about it. Well, you know, Your Honor, you did have to have a trial about it because there are certain facts that have to be established. Okay. So are you suggesting that the facts found by the district court are clearly erroneous? Not his application of the statutory language. The facts he found. Well, you know, the facts were stipulated, Your Honor. The amount of the fees. And there shouldn't have been a trial. Well, you know, but the fact is it wasn't until the trial when the evidence was coming out, and what happened is the parties at some point decided that, you know, they sat down in the middle of the evidence and made a decision that, well, we'll just stipulate to these numbers rather than go any further. And so the amount of the attorney fees. Isn't the court found $20 million was what he ought to apply this to as a fact? I mean, that's a matter of policy interpretation. Now, just a minute. This $20 million, which is what you're after, really, on the second issue, is something the court found as a fact in his trial, didn't he? No, Your Honor. This was done in a post-trial motion, and the court determined, the reason for the court's determination that it should be the last judgment, the $20 million judgment which should control, is the court found that the policy required the judgment to be, quote, entered, close quote, and this had been the only judgment that was entered. That was just wrong. Okay. All three judgments that existed in this case had all been entered on the docket, and so essentially, you know, this court has to treat the determination as one being de novo because the insurers here are going to have to argue, and they do in fact argue, for a reason why that decision should be upheld that Judge Rafiti never found. So, of course, the court has to give no deference whatsoever, one way or another, to the arguments. But at any rate, again, as I say in my papers, the only reason why we're having this discussion as to which judgment to use is because the insurers wrongly denied coverage. Had the insurers accepted the coverage at the time that an excess judgment was entered, there was only one excess judgment. That's for $22.5 million, and that's the one that would have been used to calculate costs and fees. If there are no further questions, I'll reserve the balance of my time to address the other issues. All right. Thank you, Your Honor. Good morning. May it please the Court, Susan Sullivan, on behalf of the insurers, insurance company of Pennsylvania and Lexington, and also my colleague here, Mr. Coladel, who will be addressing primarily our cross-appeal, and I'm going to start addressing the attorney fee issue. The city argues, to start, that the insurers are, quote, unable to find any clear law that attorney's fees are not damages as defined in the standard jail policy. That is clearly and eminently not so. Let me ask you the same question I asked counsel. Is the damages word in that policy clear and unambiguous? It is, Your Honor. How is it clear and unambiguous? It's clear and unambiguous because I'm going to rely here on the same Supreme Court case, California Supreme Court case, cited by the city, AIU. In that case, they say, look, the statutory and dictionary definitions of the word damages are basically common. Did you ever apply anything to the language of the contract? If I read ultimate net loss, it says, that means the sums for which the insured is legally liable as damages by reason of a judgment or a settlement. And it goes on to say a settlement made with the written consent of the claimant, the insured, and the company. Well, I'm reading from the policy itself, the special excess liability policy, and I'm reading here it is. I'm reading what ultimate loss rate. Where are you? I'm on in the record 296. Your Honor, I believe I'm reading from the same definition. It just goes somewhat beyond what you had just cited to me. Where is the added language? I guess I've got this policy. It says it's the June 30, 1990 to June 30, 1991, and it ends right at judgment or a settlement. The cite I'm giving to you is from the city's excerpt of records, both at page 296 and 325, I believe. Well, the one on 296 doesn't say anything other than settlement. This is a rather odd situation where there are actually two insurers on one primary policy. Right. So I would have to double-check that, Your Honor. It's possible that your copy has something different on it. Well, I guess my worry about that is that we're really talking then. You're suggesting that the policy from 318 through 328 trumps the policy from 292 to 298 in the record? No, Your Honor, I am not suggesting that because the policies actually should be identical. Well, this one that I'm reading doesn't say anything except or a settlement. And then I said to myself, well, damages by reason of a settlement. It was only one settlement. It was for $20 million. It wasn't allocated to anything. It seems to me that's at least ambiguous and therefore should be construed against the company. Well, there's no dispute in my view that the settlement encompasses both. Nobody says that it is. Both the damages award from the FHA 1988 claims against the city and the attorney fee award. And, in fact, the remitted judgment against the city for intentional discrimination against McClure's was $13 and then some million. But isn't that based on further trial? The reason you're coming up with this idea about this is because after we got through with a motion for summary judgment, then we had a trial about what was attorney's fees and what wasn't. And at that point, the good judge says, this is damage. This is attorney's fees. Well, the judge had a very basic reason for reaching that conclusion, and that was he wasn't there to retry the question of the city's liability to the McClures. He was there to determine what was damage and what was attorney's fees. That's what he determined, didn't he? He actually didn't determine what was attorney's fees. There was a stipulation that is submitted in the record to the court of what the attorney's fees were. Well, but he determined it, too. He said $13 million and six. He didn't determine what attorney's fees were, Your Honor. What he did in that calculation, in his view, was to equitably allocate the $20 million settlement as between damages on the one side and fees. But he wasn't determining what the fees were. He took the $20 million, and quite simply, he said that the entire judgment against the city and the three individuals would be allocated to the $20 million, and that less than the $8.5 million that was paid in attorney's fees would be allocated to the settlement. Do you think his determination of facts in that particular instance was clear error? I do, Your Honor. Why? Because I have a standard of review that I have to look at, and it's going to mesh over on his issues as well because he's up here going to be arguing about that. But with my standard of review and clear error, I'm trying to figure out why, based on the evidence in front of him, is it clear error even though I may not agree with it? Your Honor, in all of the cases that talk about allocation, and the city pointed this out, there aren't a lot of cases that talk about allocation in our scenario. Because in our scenario, Your Honor, we knew exactly what the damages were in the action by the city against McClure's. It was $13 million and change. And we also knew exactly the amount of the attorney's fees. That never happens when insurers get settlements. They are typically a mush, a number that is a mush of different causes of action, some covered, some uncovered. Here, we knew the numbers, and the judge had the numbers, and the parties stipulated to the numbers. Isn't it common, though? Well, they stipulated what the testimony would be as to what was actually paid. And there was no contrary evidence. That's right. And isn't it common, however, to have a settlement that may include an attorney's fee award explicitly or implicitly or just lumped in that has no particular relation to what's actually paid to the attorneys? I mean, very often there are fee awards that don't match what the attorneys get. That's true, Your Honor. But, again, here, we had the numbers of the actual fee award, which was, I believe, $9.5 million. Then we had the number that was actually paid to the attorneys, $8.4 million. And it's as though you can ignore information just because you don't usually get it. In our case, we had the information, the judge had the information, so it was clear you could make a clear pro rata allocation on the covered percentage of the settlement and the uncovered percentage of the settlement. So I do think it was clear error just to arbitrarily say the entirety of the judgment. And, again, let's go back and say that this judgment was against the city for FHA violations and it was against two city councilmen and the building department head for intentional malicious discrimination by the McClures. Well, but now just a minute before you slip over into his issues. Let's go back to the issue. If, in fact, in the general case where we're settling a case and we settle cases all the time, attorney's fees are often compromised in those settlements. In fact, plaintiff's counsel often compromises. Defense counsel is trying to avoid having attorney's fees to the plaintiff, so they come up with amounts. They all compromise. So at that point, we cannot tell in the normal settlement what's attorney's fees and what isn't. We don't have any idea, and we don't care. It's all damage to be paid. It doesn't matter. We don't label it attorney's fees. We just pay it as damage, and then the plaintiff goes away and pays his counsel. So in this particular instance, because somebody said this is a legal question, the poor old judge at the hearing had to determine what was attorney's fees and what wasn't, and he said there's $13,000 of this, which is damage, and the rest is attorney's fees. That's what he said. This isn't the typical regular case for many reasons. I mean, one, we are talking about a statutory award of attorney's fees, and there is a considerable amount of authority, and I'm afraid it's all been cited to you, where courts look at the attorney fee award for things like intentional discrimination and say insurance policies do not cover that. Now, again, my colleague is going to cover that issue as to the damages, but it also applies as to the attorney's fees issue, and the Cutler-Arosi case that Judge Graffiti relied on in making his decision is good law, and it is precisely on point. The Cutler case says an award of attorney's fees, like other costs, does not compensate the plaintiff for the injury that first brought him into court. Instead, the award reimburses him for a portion of the expenses he incurred in seeking relief. That is why it is not damages. In fact, the court goes on to say, attorney's fees, therefore, are inconsistent with the concept of damages as the term is used in the ordinary and popular sense, and that jibes both with the AIU case, the California Supreme Court case, where they say Let me ask you another question. If this damage that we have in this particular sentence does not include attorney's fees, why didn't you include that language in your policy? You had no trouble putting the attorney's fees issue in the environmental part of your policy. You had no trouble putting the attorney's fees issue in other parts of your policy to make sure it wasn't damage. If it wasn't to be included in this damage, why isn't it included here? This is standard form language that has been construed not to include attorney's fees. My worry is if you think it's important to put in pollution exclusion in other places, but it's not important here, why shouldn't it be damage? None of the courts impose on insurers the obligation, or any contracting party, the obligation to have their contract language as perfect as it can possibly be. And therefore, always construed against them when it isn't. But here we are talking about, and the other cases cited to the court, talk about where costs are actually covered in other provisions of the policy. Counsel, did you intend to let co-counsel speak? I did. I'd also like to reserve a few minutes for rebuttal. You don't have any minutes left. Thank you. Thank you, Judge Robinson. It may please the court, Douglas Koldell, appearing on behalf of the insurers as well. I know I said I only have a couple of minutes, so I will be real brief in highlighting my points to the court. And again, it's important to realize in this case the underlying violations were for violations of the Fair Housing Act. That act involves actions by the city members, the city agents, that are inherently intentional. And I could cite the court to the East Miller case, which was cited in our brief, that talks about that. And the type of activity and the findings of the jury in this case were such that there was no question that the city knew. Isn't that what the poor old district judge had to determine on declaratory relief when he had his trial? Judge Smith, that's why we are saying that he should have granted the summary judgment. And this issue is, as a matter of law, determined against the city. As a matter of law, the language which doesn't say only accident, but says an accident or event, and event is no place defined, that that is so clear and unambiguous that the court should absolutely know on summary judgment what to decide. And therefore, he has a trial and decides against you. And now I'm to say his evidence that he found is so clearly wrong, I'm to rule against him. Absolutely, Your Honor. And the reason is that, like the city of South El Monte case, which had the same policy language involved, the key is the definition of occurrence as an accident or event, going on, or public officials' errors and omissions, neither expected nor intended from the standpoint of the insured. And that is what takes us out. That's what he exactly focused on when he said, it may have been something they were intending to do at the time, but the actual or what happened thereafter, they could never have known and didn't intend and didn't expect, and therefore, my ruling is it's covered. Well, that's where Judge Raffiti went wrong, Your Honor. He went wrong because of the focus. And the focus is not on, oh, gosh, there's an accidental harm that's attendant to our intentional actions here. The focus on the insuring clause, which you just read here, the definition of occurrence, is on the intent to commit the act. It's the intent of the insured to commit the act, and certainly now the insured is the city. Correct. And the actors are not necessarily the city, even though they're city employees. Well, Your Honor, again, the city can only act through its employees and agents. That's true. But actions of the city, the city isn't liable in 1983, so, you know, there's apparently no plan or policy of the city, and there are no city decision makers or anything that would have caused 1983 liability on the part of the city. So I'm not sure that every employee who does everything acts for the city within the meaning of the insurance policy. If I could just back up a second, Judge Camby, and distinguish between Manel liability under Section 1983 and agency liability that would attend to the city under the Fair Housing Act, I think there are two separate and distinct. Under 1983, you do need to have a policy customer practice that is the cause of the civil rights violation. Or a city decision maker, yeah. Correct. And here, before I get to the actual, you know, city charter and how it's delineated in our brief, how so many of these individuals were high enough up on the food chain to give direct liability to the city right off the bat. But going back to the distinction of the Fair Housing Act, I think the Cox v. City of Dallas case notes the difference between not needing to have the policy customer practice in order to get the Fair Housing Act violation on behalf of the public entity. And if you look at the City of Parma case as well, where you have a whole bunch of activity going on that results in the Fair Housing Act violation, you have a situation where the city cannot bury its head in the sand and say, well, that's a guy who just had a few people going out there and causing a violation. Especially here, where there was seven months of trial that the underlying jury found were intentional acts without justification by these individuals. And they all go back to the city. And because the city can't go out and, as this big behemoth, violate, you know, as a non-person, violate somebody's fair housing rights. But its employees can. And that's what happened here. And so when Judge Smith was asking earlier, did Judge Rafiti, you know, look at this wrong and say, well, now in retrospect, you know, that we didn't intend the harm that occasionally occurs as a result of all this action, that is under the exclusion under Section 533, not under the insuring clause. So the first analysis is, was the act intentional? Well, what the poor judge was trying to ultimately determine was an event neither expected nor intended from the standpoint of the insured. That's what he was really looking at, isn't it? But, Your Honor, again, that's incorrect. Well, it's an occurrence, and that's what we're insuring. But you have to read the entire clause. And, again, the city of South Omani reads that. Because if you read it the way Your Honor just did. Well, that's all that's there. No, it's not. Respectfully, Your Honor. Where is the added language I missed? Well, the neither expected nor intended from the standpoint of the insured modifies public officials' errors or omissions. Right. Not event. And that's what the city of South Omani case says. And it distinguishes the city's case, the United Pacific case, for precisely that reason. And the United Pacific is the only case that really goes out on a limb. And, again, that case involved a special endorsement designed to broaden coverage. We don't have that here. We don't have the United Pacific exception. We have the city of South Omani policies, the identical language. In the city of South Omani, they found the intentional act, precluded coverage, and reversed summary judgment for the city of South Omani. All right, Kelsey, you've exceeded your time. Thank you, Your Honor. And we'll submit with the remaining arguments in our brief, and we appreciate the court's indulgence. Okay. Rebuttal. Thank you, Your Honor. First off, with respect to the definition of occurrence, and it's here in the record. Before you get there, you said that you were going to find in the record where you made the argument to the district court that the policy language was ambiguous and should be construed against the insurance company. Did you find that while you were sitting there? Your Honor, unfortunately, it is not in the excerpts of record. It is in the actual record. I will submit. No, don't do that. If you couldn't find it, that's fine. I'm sorry, Your Honor. With respect to the definition of occurrence, and that's over in the record in page 296, it's clear from the language of the policy that occurrence means an accident or event. Event is a very broad word. And the court in the United Pacific held it even includes intentional acts. The limitation on occurrence is that the personal injury or property damage can be neither expected nor intended from the standpoint of the insured. What's your response to opposing counsel's interpretation that that phrase modifies errors or admissions and not events? Well, you know, Your Honor, I mean, it could in a case where we were talking about errors or omissions, but what we're talking about here is we're talking about property damage. It's the fact that McClure suffered property damage that brings this case within the scope of coverage. She lost the use of the homes, and the definition of property damage here in the policy contemplates that the loss of use of property constitutes property damage. You see also a late personal injury. And so from this point, we're talking about occurrence means, and I'm going to just skip over some, personal injury, property damage, neither expected nor intended from the standpoint of the insured. So what has to be shown in order to determine whether there was an occurrence is whether the damage that the McClures suffered was expected or intended by the city. And, you know, and here's where I most fundamentally disagree with the position that the insurers are taking. You know, they seem to think that, well, you know, we should look back to the McClure case for that, the underlying case. But, of course, that case, as Judge Rafiti correctly determined, simply didn't decide the issue of whether the city or, in fact, anybody, just because it wasn't an issue with the case, intentionally intended the particular harm that was done. And so Judge Rafiti said, well, because, you know, that case didn't decide it, I have no option but to conduct a trial on the issue. And he did, in fact, conduct a trial on the issue. Kemper Brothers, by the way, is a California case that expressly says that's kind of what you have to do because if the decision from the underlying case doesn't address the precise point, then you simply can't apply collateral estoppel. You have to retry the issue. The issue was retried, and the city put on, you know, evidence of, you know, showing the events that occurred that caused the harm to the McClures. And, you know, the evidence presented, number one, is that nobody expected or intended the harm that the McClures suffered from those events, and also that they were good faith actions by city officials in order to attempt to remedy dangerous and real building defects. And those were precise findings by Judge Rafiti. So it's just improper at this point being as the insurers made no effort at that trial to show that, in fact, it was a discriminatory motive or that the actions taken by the city building inspectors was improper. It's just not right for them now to go and say, well, there must have been something bad that happened in the McClure trial or else the jury never would have found the liability that they did. They showed no discriminatory intent by Mr. Zeller. They showed no action that Mr. Zeller took that harmed the McClures, much less any knowledge that he intended to harm the McClures. This was at the trial that was conducted in front of Judge Rafiti. And so, you know, there's just no inferences to be drawn from the underlying McClure decision. Either that jury verdict addresses the issue or we just kind of have to throw it out and have a trial. We had a trial, and Judge Rafiti, after hearing the evidence, made expressed findings that are completely well supported by the evidence that was before him. And so as far as I'm concerned, you know, that sort of forecloses that issue. Now shifting on to the one additional point, the South Omani case, the insurers relied on it heavily. That's not an insurance case. The, quote, policy close quote in that case was one of these joint insurance agreements. And if you read that decision, you can even see they say we're not following insurance law here. We're going to follow general contract law. In spite of that, of course, that case expressly, you know, follows the United Pacific case, which is the case that we're relying on. The only difference is in the facts of that case. They found that, in fact, the city had expected or intended the precise injury to the insured. Turning back to the attorney fee issue very briefly, Your Honor, in Cutler O.C. we're told that case is directly on point. Your Honors, that case could not be farther from being directly on point. That case is distinguished in two very significant points. Number one, it was a 1988 case. And so, excuse me, it was not a 1988 case. It was a voting rights case. But it was similar to 1988 in that the attorney fees were expressly defined as an element of costs within the statute. On top of that, it's an odd sort of case because there were no covered damages in that case. The policy in that case defined attorney fees as costs and, in fact, covered attorney fees as costs. And what the school districts were arguing in that case was that, well, what we want is we want attorney fees to be treated as damages because otherwise we have no covered damages and there's no duty to defend. And I think the court in that case, although it issued some unfortunate dicta, which frankly is directly contradicted by the Brandt case, the result in that case was right, but it's just different than this case. Now, let me just deal one further point with that dicta, Your Honor. You're in the only region that's red. You're in the red, but go ahead. Finish your point. Okay. The point I was going to make, Your Honor, is that the statement that attorney fees aren't damages but they're just sort of money you have to pay to get into court, the only citation for that is a footnote in a federal case that, in fact, was talking about costs. And it's directly contradicted by the Brandt case, which says that, no, in order to compensate them for the legal damage. And Brandt is, of course, a holding by the California Supreme Court, and I submit that on that issue it should be binding. Thank you very much, Your Honor. If there's any further questions. Thank you to both counsel, all three counsel. Thank you very much for your argument. The case just argued is submitted for a decision by the court.
judges: Canby, Rawlinson, Smith N. R.